901 So.2d 1014 (2005)
Richard ARROYO, Appellant,
v.
STATE of Florida, Appellee.
No. 4D04-449.
District Court of Appeal of Florida, Fourth District.
May 18, 2005.
Michael D. Gelety, Fort Lauderdale, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Myra J. Fried, Assistant Attorney General, West Palm Beach, for appellee.
MAY, J.
The defendant appeals his conviction and sentence for aggravated fleeing and eluding and driving with a suspended license. We affirm the conviction and sentence, but write to address the jury instruction issue raised by the defendant.
Late one evening, law enforcement observed the defendant traveling at 50-60 mph in a 45 mph speed zone. The officer initiated a traffic stop. The defendant stopped his car and opened the door as if to exit. As the officer approached the defendant's vehicle, the defendant closed his door and fled the scene.
The officer returned to his patrol car, activated his lights and siren, radioed for assistance, and pursued the defendant. The defendant ran two red lights, slowing at the second one to navigate around the cars in the intersection. At the next traffic light, the defendant passed stopped vehicles by using the right-hand turn lane. After passing the stopped vehicles, the *1015 defendant regained a high rate of speed, and entered the City of Hollywood.
Two Hollywood K-9 units approached the defendant's vehicle from the rear and took over the chase. When the defendant pulled into his driveway, he got out of his car and ran toward the front door of his house. One of the officers tackled and handcuffed him.
The defendant testified he knew his driver's license was suspended. He "guessed" he had been speeding. When he was originally pulled over, he planned to get out of the car, but got nervous because he was shirtless and had a tattoo on his back that read "f____ the police." He knew he would be arrested so he decided to drive home and park his car to prevent it from being impounded. He knew the police were behind him with their lights and sirens on. The defendant admitted going through red lights, traveling about 70 mph, and failing to come to a complete stop at a stop sign.
The single issue we address is whether the court erred when it instructed the jury on the elements of aggravated fleeing and eluding. The defendant argues the instruction was confusing and misleading because the trial court erroneously included the words "after having stopped" in the instruction. He suggests this additional language from the uncharged misdemeanor statute improperly added an element to the crime and constituted fundamental error.
This court has written two opinions that shed light on the issue before us. See Anderson v. State, 780 So.2d 1012 (Fla. 4th DCA 2001); Sanford v. State, 872 So.2d 406 (Fla. 4th DCA 2004). Our decision hinges on whether these facts are more closely aligned with Anderson or Sanford. We find the facts more aligned with Sanford.
The fleeing and eluding statute has three relevant subsections. Subsection (1) is a misdemeanor. It prohibits the willful refusal to stop when ordered to do so by an authorized police officer in a marked police vehicle and after "having stopped," willfully fleeing to elude the officer. § 316.1935(1), Fla. Stat. (2002). Subsection (2) converts the offense to a third degree felony by adding the officer's use of "lights and sirens" as an element of the crime. § 316.1935(2), Fla. Stat. (2002). Subsection (3) converts aggravated fleeing and eluding to a second degree felony by adding the elements of "high speed" or "wanton disregard" as elements of the crime. § 316.1935(3), Fla. Stat. (2002).
The State charged the defendant with violating section 316.1935(3), Florida Statutes (2002). The Information alleged the defendant "did drive at high speed or did in any manner demonstrate a wanton disregard for the safety of persons or property, contrary to F.S. 316.1935(3)."
The trial court instructed the jury as follows:
To prove the crime of aggravated fleeing to elude a law enforcement officer, the state must prove the following five elements beyond a reasonable doubt. Number one, Richard Arroyo was operating a vehicle upon the street or highway in Florida. Number two, a duly authorized law enforcement officer ordered the defendant to stop or remain stopped. Number three, Richard Arroyo knowing he had been directed to stop by a duly authorized law enforcement officer, willfully refused or failed to stop the vehicle in compliance with the order, or having stopped the vehicle willfully fled in an attempt to elude the officer. Number four, the law enforcement officer was in an authorized law enforcement patrol vehicle with agency insignia and other jurisdictional markings prominently displayed on the vehicle and with sirens and lights activated. Number five, during the course of the *1016 fleeing and attempting to flee, Richard Arroyo, drove at high speed or in any manner demonstrated a wanton disregard for the safety of persons or property.
(Emphasis added).
The defendant argues the jury was misled by including the words "after having stopped" in the instruction, allowing the jury to convict the defendant of fleeing after he stopped the car in his driveway. He argues this possibility is the same concern that led this court to reverse the defendant's conviction in Anderson. We disagree.
In Anderson, an officer attempted a traffic stop of the defendant, who continued to drive until he reached his home. Once there, he attempted to go into his house, but was stopped by the officer. The officer acknowledged he didn't think the defendant knew he was following him while driving. We held the trial court erred when it included the words "after having stopped" in its instructions to the jury because it allowed the jury to find the defendant guilty of the offense of fleeing and eluding for simply running from the car after he parked it in his driveway. We held the error to have been fundamental.
Not long after this court decided Anderson, a similar, but distinct, factual scenario was presented in Sanford. There, a deputy heard a BOLO describing the defendant's car. As the defendant passed by, the deputy activated his lights. After a fourteen minute chase, the defendant stopped and exchanged gunfire. He then ran to his house with law enforcement firing after him. He was charged with, among other things, aggravated fleeing and eluding. He argued on appeal the court had erred by including the words "having stopped the vehicle, willfully fled in an attempt to elude the officer" in the jury instruction. He suggested this additional language confused or misled the jury as this court found in Anderson.
This court disagreed. We held there was "no risk that the jury was misled by the instruction." Sanford, 872 So.2d at 409. "This court's concern was that Anderson risked being convicted of a third-degree felony fleeing and eluding offense solely upon proof of what occurred after he stopped." Id. The same concern did not exist under the facts in Sanford and does not exist in this case.
First, Arroyo knew the police were following him. Second, he actually stopped his vehicle and then fled in the car. And third, the defense specifically asked the court to read the misdemeanor fleeing and eluding instruction, which includes the same language as an alternative lesser included offense instruction. For all of these reasons, we find the facts of this case more like those in Sanford and less like those in Anderson. We therefore find no error in the court's jury instruction on aggravated fleeing and eluding.[1]
AFFIRMED.
WARNER and GROSS, JJ., concur.
NOTES
[1] The defendant also argues the jury instructions were misleading because they did not define "high speed" or "wanton disregard." The defense, however, did not make this objection to the instruction. The standard jury instruction does not define those terms and standard jury instructions are presumed to be correct. Stephens v. State, 787 So.2d 747 (Fla.2001). Lastly, the defendant argues the court's instruction on the second lesser included offense of felony fleeing and eluding and the verdict form were confusing. While the jury did ask a question concerning the verdict form, the parties agreed to the court providing the jury with written instructions to answer the question. The defense not only did not object to the procedure, but agreed to it. We find no error in the court's handling of this issue.